Plaintiff sues for compensation at the rate of $19.50 per week for three hundred weeks and for burial expenses amounting to $150. The suit is on behalf of herself and two minor children and one mentally incapacitated child. She alleges that on August 8, 1944, her deceased husband, Gustave "Guss" Ducote, was working for the defendant as an oiler in its plant at Eola, in Avoyelles Parish, Louisiana, and that he sustained a severe injury to the thumb of his right hand, which became infected and continued to grow worse until September 1, 1944, when he died as a result of septicemia, commonly called blood poisoning. The defendant answered admitting that deceased suffered an injury to his thumb described by Dr. Jones as lesion of his thumb and a partial avulsion of his nail, which it alleges occurred on August 1, 1944. Defendant alleges that the injury had completely healed on August 14, 1944, and that the injury had not even a remote connection with his death, which it contends was caused from a heart attack or other natural causes.
On the trial of the case it was admitted that the injury occurred on August 1, 1944, instead of August 8, 1944. The district judge rejected plaintiff's demands and dismissed the suit, and from this judgment she prosecutes this appeal.
[1, 2] Appellate courts are slow to reverse the judgment of the lower court where it is based on fact, but in this case it appears to us that the preponderance of the evidence is with the plaintiff. As said by the district judge, plaintiff and her witnesses no doubt exaggerated the condition of deceased from the date of his injury to the date of his death, but despite this exaggeration plaintiff has proved her case.
The day that deceased sustained the injury to his thumb some attention was given to it at the plant and he continued to work the remainder of the day, at which time he went to Dr. Jones, who says he took three stitches in the thumb and filled the wound with sulfathiozole, dressed it and instructed him to return in a few days, which he did on August 3, 8 and 14, and at that time Dr. Jones said the wound was healed with no sign of infection and deceased continued to work until the day of his death. On the day that he died he got off from work at 8:00 a.m. and at 8:30 o'clock that night he was dead. His wife and two of the children and some neighbors all testified that during all of the time that he was working he complained with his thumb and that his hand and arm *Page 892 
were swollen and that some of the time he had fever and chilly sensations and that the gland under his arm was sore and enlarged, that his skin turned a yellowish color and that he was nauseated whenever he ate anything. All of these are symptoms of septicemia or blood poisoning, as testified to by the two doctors for plaintiff and the one for defendant. About 7:00 o'clock in the evening before death of the deceased, he was near his house where his wife and children were loading some seed cotton onto a wagon and they say that he was complaining of pain and being chilly and tried to cover himself with some of the cotton and a short time later started to the house and on the way, he fell into a ditch unconscious and was taken to the house by his wife and some neighbors that had been called to help. He never regained consciousness, and died about 8:30 p.m.
As soon as they got him to the house, Dr. Jones, the same man who had treated his thumb, was sent for and upon arrival found him already dead, but made no examination other than to see that he was dead. Dr. Jones, in answer to questions of defendant's counsel, says in his opinion there was absolutely no connection between his injury and his subsequent death, but he offers no reason for deceased's death.
Defendant contends that because deceased continued to work, even though his family say he complained, this is an indication that he was not suffering from the injury to his thumb. However, all of the doctors testified that a person might continue to work even though in pain and Dr. Jones says that some cases of septicemia are caused by much more violent germs and they are much sicker and that some will die in forty-eight hours and some will linger along and get well after months, and he says no two cases of septicemia can be compared. One of the sons testifying said that deceased continued to work because he thought he either had to work or give up his job and he was trying to hold his job. All of the witnesses testified that deceased was a willing and industrious worker, never shirking his work at all.
[3] On the trial of the case, defendant offered in evidence a certified copy of the official death certificate of deceased, marked "Defendant I" for identification. This offering was objected to by counsel for plaintiff for the reasons that it had not been identified, and that it was hearsay. The district judge overruled the objection and allowed it to be filed. We do not find it in the record. However, we believe the objection to its filing should have been sustained.
[4] The district judge felt that the testimony given by plaintiff and her witnesses was exaggerated, which is probably so, but this is not a sufficient reason for denying the demands of plaintiff unless it is rebutted by satisfactory positive evidence overthrowing the preponderance in favor of plaintiff.
On the trial of the case only $125.25 was proven as burial expenses. Having reached the conclusion that the preponderance of the evidence is in favor of plaintiff, it follows that the judgment of the district court is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Mrs. Virgie Ducote, for herself and three children, Curlie Ducote, Jennie Lee Ducote and Jimmy Ducote, and against the defendant, Anchor Gasoline Corporation, for $19.50 per week for not exceeding three hundred weeks, beginning September 1, 1944, with 5% per annum interest on past due payments from the date each payment is due and for the sum of $125.25 for burial expenses of the deceased and recognizing the contract of plaintiff to pay her attorney 20% of the amount collected, not to exceed $1000, and for all costs of this suit, in both courts.
 *Page 16